## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KUBERLAXMI LLC, | § | CASE NO. 22-51323-MMP |
| | § | |
| | § | Chapter 11 |
| DEBTOR. | § | |

### NOTICE OF PLAN REDLINE

Kuberlaxmi LLC, Debtor and Debtor in possession, provides notice of the redline of the following versions of the pending Subchapter V plan, which redline is attached hereto.

| Modified | Docket No. 129 | *Second Amended Subchapter V Plan of Reorganization of Kuberlaxmi LLC Dated April 13, 2023, As Modified* |
|---|---|---|
| Original | Docket No. 117 | *Second Amended Subchapter V Plan of Reorganization Kuberlaxmi LLC Dated April 13, 2023* |

Dated:  May 18, 2023

Respectfully submitted:

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

By:___*/s/ Jeff Carruth*_____
   JEFF CARRUTH (TX SBN:. 24001846)
   3030 Matlock Rd., Suite 201
   Arlington, Texas 76105
   Telephone: (713) 341-1158
   E-mail:  jcarruth@wkpz.com

ATTORNEYS FOR
KUBERLAXMI LLC,
DEBTOR AND DEBTOR IN POSSESSION

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| **KUBERLAXMI LLC,** | § | **CASE NO. 22-51323-MMP** |
| **DEBTOR.** | § | **Chapter 11** |

**SECOND AMENDED SUBCHAPTER V PLAN OF REORGANIZATION OF KUBERLAXMI LLC DATED April 13, 2023, AS MODIFIED May 17, 2023**

### 1. INTRODUCTION AND BACKGROUND INFORMATION.

1.1.    This SECOND AMENDED Plan of Reorganization, dated April 13, 2023, as modified on May 18, 2023May 17, 2023 (the "*Plan*") under Subchapter V of Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 et seq. (the "*Code*") proposes to pay creditors of Kuberlaxmi LLC (the "*Debtor*" or "*Kuberlaxmi*") from cash flow from future operations.

1.2.    Kuberlaxmi filed this case on November 26, 2022 as a conventional Chapter 11 small business case.  On December 17, 2022, Kuberlaxmi amended its voluntary petition (Docket No. 37) to proceed under Subchapter V of Chapter 11.  Michael Colvard is the Subchapter V Trustee.

1.3.    For convenience, this plan is based upon the official small business form, Form B25B. *Controlling definitions and rules of construction appear in Section 9 below.*

1.4.    The proposed distributions under the Plan and the material terms of the Plan, including the estimated distribution to unsecured creditors is set forth in TABLE 1—Key Plan Terms, Section 2 of the accompanying Plan ("*TABLE 1*").  As provided throughout herein, the Plan generally provides for (I) the full payment of priority claims, (2) the restructuring of the indebtedness owed to Celtic Bank, the purported first lien holder with respect to the hotel property, and the treatment of the allowed secured claim of Celtic Bank, and (3) then the dedication of the Debtor's net disposable income.

1.5.    All creditors and equity security holders should refer to Section 3 through Section 6 of this Plan for information regarding the precise treatment of their claim. *You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)*

1.6.    **Description and History of the Debtor's Business.**  The Debtor owns and operates a 60 room hotel located at 1101 Country Club Dr. Kirksville, MO 63501 (the "Hotel Property").  The hotel currently operates outside of a franchise or license systems and operates independently as the Country Club Inn & Suites.  Due to freezes and the resulting water damage, 21 rooms are currently not rentable and are in need of repair.

1.7.    **Insiders and Management of Kuberlaxmi.**  The Debtor was formed on January 24, 2015, as a Texas LLC under the name of Bhaktel LLC.  On June 23, 2021, the Debtor changed its name to Kuberlaxmi LLC because persons originally involved in the formation of entity had moved on and/or were no longer involved in the entity. At all times, the 50-50 unit holders of the Debtor have been Jatin Bhakta and his spouse Priyakumari (Priya) Bhakta.  Jatin Bhakta is the manager

Formatted: Do not check spelling or grammar

of the Debtor and will continue to be the manager of the Debtor after the Effective Date of the Plan.  Priya Bhakta will continue to help with and work for the Debtor.

**1.8.** **Significant events before and during the Chapter 11 case.**

    1.8.1.   *Events Leading to Chapter 11 Filing.*

        1.8.1.1.   On December 2, 2019, the Debtor, then known as Bhaktel LLC, filed a prior Chapter 11 case, Case No. 19-52862 in this Court.

        1.8.1.2.   As of the prior petition date, the Debtor operated as a Super 8 license holder under the Wyndham system.

        1.8.1.3.   On November 12, 2020, the Court confirmed the Chapter 11 plan of reorganization.

        1.8.1.4.   On June 23, 2021, the Debtor changed its name from Bhaktel LLC to the current name of Kuberlaxmi LLC.

        1.8.1.5.   In 2020, the Debtor lost its Super 8 license by the inability to maintain the license requirements of the Super 8 licensor, Wyndham.

        1.8.1.6.   Beginning in March 2020, the Debtor, like most all hotels, was negatively impacted by the COVID-19 pandemic.

        1.8.1.7.   Due to the prior Chapter 11 case, the Debtor was not eligible for PPP assistance.

        1.8.1.8.   On or about February 14-15, 2021, the hotel property suffered water damage during the extreme cold of winter storm Uri, resulting in damage to approximately 21 out of the 60 rooms of the hotel.  Subsequent to the freeze, the Debtor mitigated the damages caused by the freeze.  To date, those 21 rooms are not rentable and are in a state of repair.  The insurer of the Debtor, Berkshire Hathaway, has denied the insurance repair claim of the Debtor to date, and such claim is reserved in this case for future work and/or prosecution.  *On March 1, 2023, BIVERK / Berkshire Hathaway wrote to the Debtor in response to a subpoena that it had not yet issued a denial letter.*

        1.8.1.9.   In 2021, the Debtor acquired an EIDL SBA loan.

        1.8.1.10.   Commencing in January 2021, the Debtor suspended making monthly payments to Celtic Bank due to lack of funds.

        1.8.1.11.   During 2021-2022, the Debtor has experienced difficulty in maintaining on-site management of the hotel property.

        1.8.1.12.   In September 2021, Celtic Bank provided notice of a foreclosure sale scheduled to occur on November 29, 2022.  On November 26, 2022, the Debtor commenced this case to stay the foreclose sale noticed by Celtic Bank.

Formatted: Do not check spelling or grammar

1.8.2. *Events during and information relating to this Bankruptcy Case:* The entirety of the events that have occurred during this Chapter 11 case may be found on docket sheet of this case available at the Court or through the PACER website of the Court, ***https://ecf.txwb.uscourts.gov/***. Any of the documents on file in this case may be obtained by contacting the undersigned law firm or are available at the following shared folder link shown in the footnote below and selecting the folder for this case.[1]

1.8.3. *Recovery of Avoidable Transfers and other claims and causes of action of the estate.* Kuberlaxmi shall **RETAIN** avoidance actions or any other claims, causes of action, and/or any and all other lawsuits under Code §§544, 547, 548, 549, and/or 550, including any objections to claims and any related set offs, and any and all facts, claims, issues, rights, remedies, and/or defenses related thereto, including the claims and causes of action set forth in **Exhibit KUB305**.

> ***Otherwise, Kuberlaxmi may provide notice of additional claims and/or causes of action by a supplement to the Plan to be filed within seven (7) days of the Confirmation Hearing.***

1.8.4. *Objections to Claims.* Except to the extent that a claim is already allowed pursuant to a final non-appealable order, Kuberlaxmi reserves the right to object to all claims (including scheduled claims) through and until and even after the Effective Date. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.

## 1.9. **Current And Historical Financial Conditions.**

1.9.1. The assets and liabilities of Kuberlaxmi are described in the Schedules (Docket No. 16) and Statement of Financial Affairs (Docket No. 17) filed by Kuberlaxmi in this case. A summary of the assets of and claims against Kuberlaxmi appears in **Exhibit KUB301**[2] and **Exhibit KUB302** attached hereto. The deadline for filing proofs of claim occurred/occurs on March 20, 2023, and May 24, 2023 for governmental entities.

1.9.2. A liquidation analysis appears in **Exhibit KUB303**.

1.9.3. Projections in support of the Plan appear in **Exhibit KUB304**.

1.9.4. Kuberlaxmi reserves the right to amend any of the schedules and other information in support of the Plan prior to the Confirmation Hearing.

1.9.5. The most recent operating report of the Debtor is available on PACER, the Google drive link described above, and/or by contacting the undersigned.

> **NO CLAIM SHOULD BE DEEMED TO BE ALLOWED IN ANY PARTICULAR AMOUNT BASED UPON A DESCRIPTION OR REFERENCE TO ANY SUCH CLAIM OR TO ANY CLASS OF CLAIMS IN THE EXHIBITS. THE DEBTOR**

---

[1] https://drive.google.com/drive/folders/13Hte9eduWbSf8HUge0TLYZdy1phn-ydf?usp=share_link
[2] The Debtor is consecutively numbering all exhibits throughout this case. The exhibits related to the plan and disclosure statement will being with the number 300 beginning with the ballot exhibit to distinguish from previous exhibits used in this case.

> **Formatted:** Do not check spelling or grammar

SECOND AMENDED SUBCHAPTER V PLAN OF REORGANIZATION OF
KUBERLAXMI LLC, AS MODIFIED — Page 3

2337033.DOCX2325655.DOCX[1]

> **DOES NOT WAIVE ANY FACT, CLAIM, ISSUES, RIGHT, REMEDY, AND/OR DEFENSE WITH RESPECT TO A DESCRIPTION OR REFERENCE TO ANY CLAIM IN THE EXHIBITS.**

2. **SUMMARY OF THE PLAN, TABLE 1 — KEY PLAN TERMS**.  The key terms of this Plan are set forth in TABLE 1 below.

| TABLE 1  KEY PLAN TERMS | | | | | | | |
|---|---|---|---|---|---|---|---|
| **TREATMENT OF CLAIMS** | | | | | | | |
| Class | Creditor | Impaired | Projected Allowed Claim | Interest Rate Per Year | Payments ## | Payment Per Month | Total Payments | Note |
| **Non-classified Claims** | | | | | | | | |
| | WKPZ Fees (estimated) | n/a | 40,000 | n/a | 1 to 3 | n/a | 40,000 | |
| | SubV Trustee (estimated) | n/a | 5,000 | n/a | 1 | n/a | 5,000 | |
| **Secured Claims** | | | | | | | | |
| 1 | Adair Co. | Yes | 17,000 | 0.0600 | 55 | n/a | TBD | 1 |
| 2 | Celtic Bank | Yes | 1,275,000 | 0.0575 | 60 | 7,571 | TBD | 2 |
| **Priority Unsecured Claims** | | | | | | | | |
| | None. | | n/a | 0.1200 | 48 | n/a | n/a | |
| **General Unsecured Claims** | | | | | | | | |
| 3 | General unsecured claims | Yes | 740,501 | 0 | 60 | TBD | TBD | 3 |
| 4 | J. & P. Bhatka | Yes | 400,000 | 0 | 0 | 0 | 0 | |
| **Equity Interests** | | | | | | | | |
| 4 | Equity interests - see below | | | | | | | |

| EQUITY IN REORGANIZED DEBTOR | | | |
|---|---|---|---|
| Holder | % Interest | Pre-Bk Interest | Disposition |
| Jatin Bhakta | 50.00% | 50.00% | Retain. |
| Priya Bhakta | 50.00% | 50.00% | Retain. |

| MANAGEMENT AFTER REORGANIZATION | | | |
|---|---|---|---|
| Name | Position | Comp. Per Month | Comp. Per Year |
| Jatin Bhakta | Manager LLC / Onsite Manager | 1,200 | 62,400 |
| Priya Bhakta | Key Employee / Off-Site Management | 500 | 26,000 |
| *Note: Compensation dependent upon payment of claims and-or funds available.* | | | |

| EXECUTORY CONTRACTS AND/OR LEASES  TO BE ASSUMED | | | |
|---|---|---|---|
| Counter Party | Description of Contract | Cure Amount | Payments Per Month |
| DirecTV | television service | 0 | 780 |
| Sparklight | internet | 0 | 841 |
| Area Distributors | laundry | 0 | 200 |
| Any insurance policies | Any insurance policies | 0 | 3,000 |

| EXECUTORY CONTRACTS AND/OR LEASES TO BE REJECTED | | |
|---|---|---|
| Counter Party | Description of Contract | |
| Any and all other contracts | | |

| NOTE | 1 - Claim is estimated. |
|---|---|
| NOTE | 2 - Celtic Bank secured claim treatment is interest only for first 30 months. |
| NOTE | 3 - Plan establishes quarterly distributions.  This line item here is represented as monthly to coincide with projections. |

C:\Users\jcarruth\AppData\Local\Worldox\ZM5x00\NKUB002x00002\[2274064.XLSX]TABLE1

**Formatted:** Do not check spelling or grammar

| TABLE 1  KEY PLAN TERMS | | | | | | | |
|---|---|---|---|---|---|---|---|
| TREATMENT OF CLAIMS | | | | | | | |
| Class | Creditor | Impaired | Projected Allowed Claim | Interest Rate Per Year | Payments # | Payment Per Month | Total Payments | Note |
| **Non-classified Claims** | | | | | | | | |
| | WKPZ Fees (estimated) | n/a | 40,000 | n/a | 1 to 3 | n/a | 40,000 | |
| | SubV Trustee (estimated) | n/a | 5,000 | n/a | 1 | n/a | 5,000 | |
| **Secured Claims** | | | | | | | | |
| 1 | Adair Co. | Yes | 17,000 | 0.0600 | 55 | | TBD | 1 |
| 2 | Celtic Bank | Yes | 1,580,000 | 0.0575 | 36 | 7,571 | TBD | 2 |
| **Priority Unsecured Claims** | | | | | | | | |
| | None. | | n/a | 0.1200 | 48 | n/a | n/a | |
| **General Unsecured Claims** | | | | | | | | |
| 3 | General unsecured claims | Yes | 740,501 | 0 | 60 | TBD | TBD | 3 |
| 4 | J. & P. Bhatka | Yes | 400,000 | 0 | 0 | 0 | 0 | |
| **Equity Interests** | | | | | | | | |
| 4 | Equity interests - see below | | | | | | | |

| EQUITY IN REORGANIZED DEBTOR | | | |
|---|---|---|---|
| Holder | % Interest | Pre-Bk Interest | Disposition |
| Jatin Bhakta | 50.00% | 50.00% | Retain. |
| Priya Bhakta | 50.00% | 50.00% | Retain. |

| MANAGEMENT AFTER REORGANIZATION | | |
|---|---|---|
| Name | Position | Comp. Per Month | Comp. Per Year |
| Jatin Bhakta | Manager LLC / Onsite Manager | 1,200 | 62,400 |
| Priya Bhakta | Key Employee / Off-Site Management | 500 | 26,000 |
| *Note: Compensation dependent upon payment of claims and-or funds available.* | | | |

| EXECUTORY CONTRACTS AND/OR LEASES  TO BE ASSUMED | | |
|---|---|---|
| Counter Party | Description of Contract | Cure Amount | Payments Per Month |
| **DirecTV** | television service | 0 | 780 |
| **Sparklight** | internet | 0 | 841 |
| **Area Distributors** | laundry | 0 | 200 |
| **Any insurance policies** | Any insurance policies | 0 | 3,000 |

| EXECUTORY CONTRACTS AND/OR LEASES TO BE REJECTED | |
|---|---|
| Counter Party | Description of Contract |
| Any and all other contracts | |

| NOTE | 1 - Claim is estimated. |
|---|---|
| NOTE | 2 - Celtic Bank secured claim treatment is interest only for first 30 months. |
| NOTE | 3 - Plan establishes quarterly distributions.  This line item here is represented as monthly to coincide with projections. |

C:\Users\sjcarruth\AppData\Local\World\o\x\ZMS\00NKUB002\00002x[2274064.XLSX]TABLE1

2337033.DOCX2335655.DOCX[1]

**Formatted:** Do not check spelling or grammar

3. **CLASSIFICATION OF CLAIMS**

The classification of claims and interests and the impairment of claims and interests is set forth in TABLE 1 and /or the Exhibits attached to the Plan.

4. **TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS**

4.1. **Unclassified Claims.** Certain types of claims are automatically entitled to specific treatment under the Code. Under Code §1123(a)(1), administrative expense claims, and priority tax claims are not in classes. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, pursuant to Code §1129(a)(1), the Debtor has *not* placed such claims in any class.

4.2. **Administrative Expenses.** Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code §507(a)(2). Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the Effective Date of the Plan, unless a particular claimant agrees to different treatment.

As of the filing of this Plan, the Debtor has received no notice of any administrative expense, other than attorneys' fees and expenses of Weycer Kaplan Pulaski & Zuber P.C. ("*WKPZ*") incurred for Kuberlaxmi, the potential fees of Stephen W. Cook, CPA, PLLC relating to the preparation of tax returns, and the fees of the Subchapter V Trustee.

4.3. **Priority Tax Claims.** Priority tax claims are unsecured income, employment, and other taxes described by Code §507(a)(8). Unless the holder of such a §507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding five (5) years from the order of relief.

5. **TREATMENT OF CLAIMS AND INTERESTS.** The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

5.1. **Class 1 — Ad Valorem Taxes**

5.1.1. <u>Identity of Claims in Class:</u> Class 1 consists of the allowed secured claim(s) of any governmental entity asserting ad valorem property tax claims against any property of the Debtor (collectively, the "Ad Valorem Tax Claimants").

5.1.2. <u>Treatment:</u> The Debtor/Reorganized Debtor shall pay all amounts allowed and owed to the Ad Valorem Tax Claimants in equal monthly installments over the 60-month period commencing with the first full calendar month following the Effective Date. Regardless of whether the allowed claims are disputed or undisputed, the Ad Valorem Tax Claimants shall receive interest from the Petition Date through the Effective Date and from the Effective Date through payment in full at the state statutory rate pursuant to Code §§ 506(b), 511, and 1129.

---

Formatted: Do not check spelling or grammar

Each of the Ad Valorem Tax Claimants shall retain its statutory lien in, to, and/or against property of the Debtor. Nothing contained in the Plan alters the due date for the payment taxes which were assessed and/or otherwise accrued after the Petition Date.

The Confirmation Order may contain additional provisions regarding the enforcement of the allowed claim post-effective date at the request of the creditor.

5.1.3. **<u>Voting</u>.** This class is impaired and may vote for or against the Plan.

5.2. **<u>Class 2 — Celtic Bank.</u>**

5.2.1. <u>Identity of Claims in Class:</u> Class 1 consists of the allowed secured portion of the claim of Celtic Bank with respect to the Hotel Property.

5.2.2. <u>Treatment:</u> The allowed secured claim of Celtic Bank will be set at **<u>$1,580,000</u> in accordance with an appraisal of the property dated April 4, 2022 commissioned by Celtic Bank**, will accrue interest at the rate of 5.75% per annum on a 25-year amortization, and will be paid during (i) months 1-18 in the amount of **<u>$7,571.00</u>** per month (the "*<u>Celtic Payment</u>*") and (ii) during months 18-36 the Celtic Payment will increase by 25% for each payment, with payments under the foregoing commencing on the first full day of the of the first full calendar month following the Effective Date.

Payment shall be applied to the allowed secured claim in accordance with the Existing Loan Documents (as defined below).

> ***To the extent necessary, this Plan constitutes a motion to value the allowed secured claim of Celtic Bank under Code §§502 and/or 506.***

All remaining outstanding amounts will be due and payable (i.e. a balloon payment) on the first day of the ~~61st~~ THIRTY-SEVENTH (37TH) full calendar month after the Effective Date.

Celtic Bank will retain all security interests and liens through completion of the payments described above. The nonmonetary provisions of the Promissory Note, Security Agreement, and other loan and security documents entered into between the Debtor and Celtic Bank (the "*<u>Existing Loan Documents</u>*") will otherwise remain in effect except as modified by the Plan.

The Debtor shall keep property taxes not otherwise treated under the Plan paid current and when due by the relevant governmental unit.

The Debtor shall maintain and provide proof of insurance as required under the Existing Loan Documents.

**<u>Notice of default and opportunity to cure.</u> In the event of any default in the performance of the Plan or any of the other obligations of the Existing Loan Documents by the Debtor, Celtic Bank shall provide written notice of default to the Debtor and provide a period of not less than ten calendar (10) days to cure any such defaults before exercising any rights or remedies provided by the Existing Loan Documents and/or applicable law.**

Formatted: Do not check spelling or grammar

**THE DEBTOR WILL BE ENTITLED TO ONLY TWO (2) NOTICES OF DEFAULT AND AN OPPORTUNITY TO CURE WITH RESPECT TO (i) A MISSED, LATE, OR PARTIAL PAYMENT UNDER THE PLAN, (ii) THE FAILURE TO PAY ANY PROPERTY TAXES THAT ~~COME DUE IN THE FUTURE AND ARE NOT TREATED BY THE PLAN~~ ARE DUE AND PAYABLE, AND/OR (iii) A LACK OF INSURANCE REQUIRED UNDER THE EXISTING LOAN DOCUMENTS, AND THEREAFTER UPON ANY SUBSEQUENT DEFAULT, CELTIC BANK MAY PROCEED TO EXERCISE ANY RIGHTS OR REMEDIES PROVIDED BY THE EXISTING LOAN DOCUMENTS AND/OR APPLICABLE LAW.**

**ADDITIONAL PROVISIONS TO ADDRESS THE CONCERNS AND/OR TREATMENT OF CELTIC BANK APPEAR IN PLAN SECTION 13.**

**Celtic Bank will not seek to enforce any of the obligations or remedies with respect to any personal guaranty of each of Jatin Bhakta and/or Priyah Bhakta so long as the Debtor is in compliance with the Plan and the Existing Loan Documents. For the avoidance of doubt, for purposes of this provision, any cure accomplished by the Debtor under the cure provision above will count as compliance under terms of the Plan with respect to the personal guaranties.**

In addition, the Debtor shall perform the following with respect to Celtic Bank.

The Debtor shall provide Celtic Bank with a copy of each bank statement from each bank account maintained by the Debtor.  This deliverable will be due by the twentieth (20th) day of the calendar month following the date of delivery of each bank statement from each bank to the Debtor.

The Debtor shall provide Celtic Bank with its quarter-end financials for each calendar quarter the closes on or after the Effective Date.  This deliverable will be due by the thirtieth (30th) day of the calendar month following date on which the calendar quarter closes.  Thus, for example, the first quarterly financial report will be due by October 30, 2023.

Celtic Bank may inspect the Property at any time on forty-eight hours notice.

The Debtor by September 30, 2024, must undertake all actions necessary to have completed any necessary repairs and to make rentable the 20-21 rooms that are currently unrentable due winter storm related damages.

If revenue improves, the Debtor will endeavor to employ a third-party management company.  The Debtor will provide Celtic Bank with email updates at least once a month on the progress in retaining and/or the ability to retain a third-party management company.

All deliverables that become due to Celtic Bank under the Plan and/or the Existing Loan Documents shall be made to the following address.

| | |
|---|---|
| **Celtic Bank Corporation**<br>**Attn:  Special Assets**<br>**268 South State Street, Suite 300** | *With a copy to:*<br><br>**Megan M. Adeyemo** |

*Formatted:* Do not check spelling or grammar

| | |
|---|---|
| Salt Lake City, UT 84111to be specified in confirmation order | Gordon & Rees 2200 Ross Avenue, Suite 3700 Dallas, TX 75201 madevemo@grsm.comto be specified in confirmation order |

*Formatted: Indent: Left: -0.01"*

All provisions of the underlying loan documents remain in full force and effect and are not modified by the Plan unless modified by this Section 5.2 and Section 13 of the Plan.

    5.2.3.   **Voting.**  Class 1 is IMPAIRED and may vote for or against the Plan.

5.3.    **Class 3 — General Unsecured Claims.**  This class consists of allowed general unsecured claims that are not secured by property of the estate and that are not entitled to priority under §507(a) of the Code.

    5.3.1.   Identity of General Unsecured Claims:  As set forth in KUB302, the Class 3 general unsecured creditors consist of general unsecured claims asserted in aggregate amount of approximately $740,501, which includes the Celtic Bank deficiency claim.

    5.3.2.   Treatment of General Unsecured Claims:  The holders of allowed claims in Class 3 will receive a pro rata distribution of the net disposable income of the Debtor each month after the satisfaction of the Plan payments and operating expenses of the Debtor, for period of 60 months after the Effective Date, with a distribution occurring at the end of each calendar quarter commencing with the first full calendar order following the Effective Date.[3]

*The Debtor will be the disbursing agent to the holders of allowed claims in this class in order to save costs and expenses of distributions.*

**Notice of default and opportunity to cure.**  In the event of any default in the payments required under this class, then the holder(s) of the allowed claim(s) shall provide written notice of default to the Debtor and provide a period of not less than ten (10) days to cure any such defaults before exercising any rights or remedies under the existing contract(s) or loan documents and/or under applicable law.

    5.3.3.   Voting.  Class 3 is IMPAIRED and may vote for or against the Plan.

5.4.    **Class 4 — General unsecured claims of insiders.**  The general unsecured claim of Jatin and Priya Bhatka in the amount of $400,000 will be allowed in full but will receive no distributions under the Plan unless and until all of the claims of Class 3 are paid in full.

    5.4.1.   Voting.  Class 4 is impaired and may vote for or against the Plan.

5.5.    **Class 5 — Class of Equity Interest Holders.**  The holders of equity interests in the Debtor will retain their interests.  Thus, Jatin Bhakta and Priya Bhakta each will retain their 50.00% interest

---

[3] The projections Exhibit KUB304 show a monthly distribution for cash flow purposes only and *not* to indicate a monthly distribution.

*Formatted: Do not check spelling or grammar*

in the Debtor. Jatin Bhakta and Priya Bhakta shall continue to own all units of Kuberlaxmi after the Effective Date.

Class 4 is unimpaired and is deemed to accept the Plan.

**6.    ALLOWANCE AND DISALLOWANCE OF CLAIMS**

6.1.    Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

6.2.    *Without limiting future potential claim objections, the Debtor currently disputes certain claims identified in Section 5.3.1 above and/or Exhibit KUB302.01.*

6.3.    Delay of Distribution on a Disputed Claim.    No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

6.4.    Settlement of Disputed Claims.    After the Effective Date, the Debtor will have the power and authority to settle and compromise a disputed claim without court approval and without compliance with Bankruptcy Rule 9019.

**7.    PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

7.1.    The Debtor ***ASSUMES*** the executory contracts and/or unexpired leases referenced and described in TABLE 1 upon the date of the entry of the order confirming this Plan.

7.2.    Otherwise, the Debtor will assume any executory contract for which a motion to assume is granted or pending prior to the Effective Date.

7.3.    The Debtor will be conclusively deemed to have ***REJECTED*** all executory contracts and/or unexpired leases not expressly assumed above, or before the Effective Date or as otherwise specified in TABLE 1.

7.4.    **PROOF OF CLAIM FOLLOWING REJECTION:  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than fourteen (14) days after the date of the order confirming this Plan.**  Any such claim will be treated, if allowed general unsecured claim and the general unsecured creditor class will be adjusted accordingly.

**8.    MEANS OF IMPLEMENTING THE PLAN.**

8.1.    **Source of Payments.**  Payments and distributions under the Plan will be funded by the income from the normal operations of the Debtor, and consisting of operations of the Hotel Property.

Jatin Bhakta will devote a majority of his to be on-site at the Hotel Property when the hotel lacks a full time on site qualified manager.  The Debtor will seek to further increase its long-term stays by increasing marketing to local industry which bring large numbers of workers in and out of the Kirksville area.  If sufficient revenues exist, the Debtor could employ a third-party management company to manage day-to-day operations and to supplement the marketing efforts of Mr. Bahkta.

> **Formatted:** Do not check spelling or grammar

The Debtor will prosecute its claims against biBERK / Berkshire Hathaway business insurance to obtain funds to (i) reduce the Celtic Bank debt and/or (ii) complete repairs at the hotel property for the rooms that are not being rented. *See also*, Plan §13.3 below.

8.2. **Distribution of Payments.** The reorganized Debtor shall be the disbursing agent for payments under the Plan, or in the event of a confirmation under Code §1191(b), then the Subchapter V Trustee shall act as the disbursing agent, unless the Court orders otherwise. The Debtor hereby moves to be the disbursing agent in the vent of confirmation under Code §1191(b). *The Debtor intends to request that it be the disbursing agent at the Confirmation Hearing.*

8.3. **Post-confirmation Management.** The post-confirmation management of the Debtor, and the compensation for each such person is set forth in TABLE 1.

8.4. **Risk Factors.** The proposed Plan has the following risks: The hotel generates insufficient revenue to fund the Plan due to national and/or local economic events which hamper the demand for rooms.

9. **GENERAL PROVISIONS**

9.1. **Definitions and Rules of Construction.** The definitions and rules of construction set forth in Code §§101 and 102 shall apply when terms are defined or construed in the Code. Other terms are defined throughout the Plan, and terms may be defined in, and then used in the Plan and vice versa. Any reference to the Debtor that applies to any period of time after the Effective Date shall refer to the Debtor as the Reorganized Debtor. In addition, the following terms used in the Plan are defined below.

9.1.1. "***Confirmation Hearing***" shall mean and refer to the hearing conducted by the Court to consider this Plan.

9.1.2. "***Confirmation Order***" shall mean and refer to the order confirming this Plan.

9.2. **Severability.** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

9.3. **Captions.** The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

9.4. **Primacy of the Plan and Confirmation Order.** To the extent of any conflict or inconsistency between the provisions of the Plan on the one hand, and the Confirmation Order on the other hand, the provisions of the Confirmation Order shall govern and control. ***Unless directed by the Court to so earlier, the Debtor will file notice of a proposed Confirmation Order seven (7) days prior to the Confirmation Hearing.***

9.5. **Binding Effect.** The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

9.6. **Controlling Effect.** Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

Formatted: Do not check spelling or grammar

9.7.    **Corporate Governance.**  After the Effective Date of the order confirming the Plan, the management of the Debtor will consist of the following:  See TABLE 1.

9.8.    **Corporate Authority.**  All actions and transactions contemplated under the Plan shall be authorized upon confirmation of the Plan without the need of further approval, notice or meetings, that might otherwise be required under applicable state law or otherwise, other than the notice provided by serving this Plan on all known creditors of Kuberlaxmi, all interest holders, and all current directors or managers of Kuberlaxmi.

9.9.    **Sales of Property.**  Any sales, transfers, and/or conveyances of some or all of the Subject Property shall be made pursuant to, at minimum, constitutes sales under Code §§ 363(f), 1122(a)(5), and/or 1125(b)(4), and each such sale, transfer, and/or conveyance shall be free and clear and any lien, claims, encumbrances, and/or any other interests, expect as specified above with respect to particular Lots and/or particular conveyances.  For the avoidance of doubt, under this plan and by operation of Code § 1141, after confirmation and the occurrence of the effective date, the Debtor requires no further approval of the Court to sell any property of the Debtor.  For the avoidance of doubt, the Reorganized Debtor is fully authorized to transact its property after the Effective Date, without further order of the Court, and this statement in on way, shape, or form operates to release any lien or claim with respect to the property of the Reorganized Debtor.

9.10.   **Fixing of Claims.**  To the extent that the modification and/or fixing of any claim occurs under the Plan, the Plan also constitutes an objection to any filed proof of claim and/or scheduled claim under Code §502 and/or Bankruptcy Rules 3007 and 9014, and any applicable Local Rules.

9.11.   **Settlement of Claims and Disputes.**  The Plan also constitutes a motion under Bankruptcy Rule 9019 to the extent necessary to confirm the Plan.

9.12.   **Debtor name change.**  The Debtor may change its name and/or adopt one or more business aliases after the Effective Date.

**10.  EFFECT OF CONFIRMATION OF PLAN — DISCHARGE**

On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in Code §1141(d)(1)(A) except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in Code §1141(d)(6)(A) if a timely complaint was filed in accordance with Bankruptcy Rule 4007(c), or (iii) of a kind specified in Code §1141(d)(6)(B).  After the effective date of the Plan your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

**11.  EFFECTIVE DATE OF PLAN.**

The effective date of the Plan (the "*Effective Date*") shall be the first business day following the date that is fourteen (14) days after the entry of the order of confirmation.  If, however, a stay of the Confirmation Order is in effect on that date, the Effective Date will be the first business day after the date on which the stay of the Confirmation Order expires or is otherwise terminated.  ***The Effective Date may occur without further notice by the Debtor***.

2337033.DOCX2325655.DOCX[1]

Formatted: Do not check spelling or grammar

## 12. **FINAL DECREE**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Court shall designate in the Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.  Alternatively, the Court may enter such a final decree on its own motion.

## 13. **OTHER PLAN PROVISIONS**

13.1.   **Scope and Retention of Jurisdiction.** The Bankruptcy Court shall retain jurisdiction to: *(i)* hear and determine pending applications for the assumption or rejection of contracts or leases and the allowance of Claims resulting therefrom; *(ii)* hear and determine any and all adversary proceedings, applications, and contested matters, including any remands of appeals, and including any Estate Actions; provided, however, that the Reorganized Debtor shall not be required to seek or obtain approval of the Bankruptcy Court under Bankruptcy Rule 9019 or otherwise as to the settlement or compromise of any Estate Actions post-Effective Date; *(iii)* ensure that distributions to holders of Allowed Claims are accomplished as provided herein; *(iv)* hear and determine any timely objections to or applications concerning Claims or the allowance, classification, priority, estimation, or payment of any Claim or Interest, and to enter Estimation Orders; *(v)* hear and determine all Fee Applications and Fee Claims; provided, however, that the Reorganized Debtor shall not be required to seek or obtain approval of the Bankruptcy Court under section Code §330 or otherwise as to the allowance or payment of professional fees post-Effective Date; *(vi)* enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated; *(vii)* hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan; *(viii)* enter and implement such orders as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the Plan and the transactions contemplated thereunder; *(ix)* consider any modification of the Plan pursuant to Code § 1127, to cure any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order; *(x)* enter and implement orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with the consummation or implementation of the Plan, including, without limitation, to issue, administer and enforce injunctions provided for in the Plan and the Confirmation Order; *(xi)* recover all assets of the Debtor and property of the estate, wherever located; *(xii)* hear and determine matters concerning state, local, and federal taxes in accordance with Code §§ 346, 505, and 1146; *(xiii)* hear and determine any other matter not inconsistent with the Code and chapter 28 of the United States Code that may arise in connection with or related to the Plan; and enter a final decree closing the Bankruptcy Case; and (*xiv*) to reopen the case and enforce the Plan as set forth in Section 5 above.

13.2.   **Litigation and retained causes of action.** Kuberlaxmi expressly retains the claims and causes of action referenced and described in **Exhibit KUB305.01**.

> ***Otherwise, Kuberlaxmi may provide notice of additional claims and/or causes of action by a supplement to the Plan to be filed within seven (7) days of the Confirmation Hearing.***

**Formatted:** Do not check spelling or grammar

2337033.DOCX2326655.DOCX[1]

13.3.  **PROSECUTION OF RETAINED CLAIMS VERSUS BIBERK / BERKSHIRE HATHAWAY BUSINESS INSURANCE.**

Debtor will retain contingent fee counsel to prosecute the claims that are retained versus Berkshire Hathaway Business Insurance and/or biBERK Business Insurance related to unpaid insurance claims arising from winter storm freezes and water damage to the Hotel property.

The Debtor shall maintain full discretion to settle these claims without further Court approval.

The Debtor will split 50-50 with Celtic Bank the net proceeds of any recovery. Celtic Bank will apply the proceeds to reduce the principal of the allowed secured claim.

13.4.  **65 MONTH INJUNCTION TO ANY SUBSEQUENT BANKRUPTCY CASE.**

**THE DEBTOR SHALL BE BARRED, RESTRAINED, AND ENJOINED FROM FILING ANY OTHER BANKRUPTCY CASE FOR A PERIOD OF 65 MONTHS AFTER THE EFFECTIVE DATE.**

13.5.  **POTENTIAL REPLACEMENT OF ESTATE FUNDS AND/OR CASH COLLATERAL.**

Celtic Bank has made the accusation during this case that the Debtor has misspent funds in the reimbursement of insiders for items that the insiders purchase for the Debtor and/or in the course and scope of operating the Debtor, and the propriety of credit card payments made directly to personal credit cards of one or more insiders. This section addresses and remedies those concerns.

The Debtor will present records of all spending of funds of the estate during the pendency of this case to the Subchapter V Trustee within thirty (30) days of the Effective Date.

The Subchapter V Trustee will interact and/or consult with the Debtor and/or insiders of the Debtor regarding the purpose and use of funds and whether the funds were for the benefit of the hotel.

Upon the conclusion of such consultation and within sixty (60) days of the Effective Date, the Subchapter V Trustee will file with the Court a report of the amounts which the Subchapter V Trustee believes were not spent to or for the benefit of the Hotel and/or not in the course and scope of operating the hotel.

The Debtor and/or any other party in interest may object to the report with ten (10) days of the filing of the report.

If no objection is received in those ten (10) days, then the insiders who received the non-hotel related benefit must reimburse the Debtor within ninety (90) days. If an objection is received, then the Court will hold a hearing on the proper amount of reimbursement, and the reimbursement payment will be deferred until such hearing.

Any amounts to be reimbursed or reimbursed will be considered to be the cash collateral of Celtic Bank, and the reimbursement will be paid directly to Celtic Bank for the reduction of principal.

13.6.  Debtor will be deemed to have fully satisfied any tax audits conducted by the State of Missouri, City of Kirksville, Missouri or any related governmental unit. Debtor will be deemed to have

**Formatted:** Do not check spelling or grammar

fulfilled any obligations to renew its authorization or any license to conduct business for any applicable authorization period that has occurred or commenced prior to the Effective Date.

*{continued on following page}*

**Formatted:** Do not check spelling or grammar

**SECOND AMENDED SUBCHAPTER V PLAN OF REORGANIZATION OF KUBERLAXMI LLC, AS MODIFIED — Page 15**

2337033.DOCX2325655.DOCX[1]

**KUBERLAXMI LLC,**
**DEBTOR AND DEBTOR-IN-POSSESSION**

**By:**

/s/ Jatin Bhakta
**By:  Jatin Bhakta, President**

**Counsel to the Debtor and**
**Debtor in Possession:**

**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
Jeff Carruth (SBT #24001846)
3030 Matlock Rd., Suite 201
Arlington, TX 76015
(713) 341-1158
E-mail:  jcarruth@wkpz.com

---

**Formatted:** Do not check spelling or grammar

**EXHIBIT KUB301.03**

| EXHIBIT KUB301.03 | | | | |
|---|---|---|---|---|
| Assets as of Petition Date | | | | |
| No Admission of Liability | | | | |
| **Asset Description** | | | **Value on Schedule A-B** | |
| Land and Hoel / improvements | | | 1,580,000.00 | |
| Checking - Broadway Bank | | | 19,848.09 | |
| Inventory/Supplies | | | 12,000.00 | |
| Misc. Office Furniture | | | 1,600.00 | |
| Office Equipment | | | 300.00 | |
| Other (two dryers) | | | 600.00 | |
| 3rd Party Cause of Action (insurance) | | | 0.00 | estimated 500,000, is contingent |
| | | | | |
| **TOTAL** | | | **1,614,348.09** | |

C:\Users\jcarruth\AppData\Local\Worldox\ZMS\00\KUB002\00002\{2274064.XLSX}KUB001

**Formatted:** Do not check spelling or grammar

**EXHIBIT KUB302**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | **EXHIBIT KUB302.03** | | | | | |
| | | | | Scheduled Claims and Proofs of Claim Analysis | | | | | |
| | | | | NO ADMISSION OF LIABILITY, ALL FACTS, CLAIMS, ISSUES, RIGHTS, REMEDIES, AND/OR DEFENSES | | | | | |
| ClaimNo | Class | Claimant | Secured | Priority | Unsecured | Total | Potential Allowed | ClassTotal | Notes |
| POC 003 | 0-Priority | State of Mo. Sales Tax | 0 | 35,975 | 0 | 35,975 | | | |
| POC 004 | 0-Priority | State of Mo. Sales Tax | 0 | 13,663 | 0 | 13,663 | | | |
| POC 005 | 0-Priority | State of Mo. Sales Tax | 0 | 1,097 | 0 | 1,097 | | 50,736 | |
| Scheduled | 1 | Adair Co. | 17,000 | 0 | 0 | 17,000 | | 17,000 | |
| Scheduled | 2 | Celtic Bank | 1,580,000 | 0 | 0 | 1,580,000 | | 1,580,000 | |
| POC 008 | 3 | Amaren Missouri | 0 | 0 | 1,492 | 1,492 | | | |
| Scheduled | 3 | Celtic Bank | 0 | 0 | 294,269 | 294,269 | | | Total claim as of petition date was $1,874,269.36. |
| Scheduled | 3 | Franey, Joe | 0 | 0 | 3,500 | 3,500 | | | |
| POC 006 | 3 | Heidi McLeod Law Office PLLC | 0 | 0 | 14,710 | 14,710 | | | |
| Scheduled | 3 | SBA EIDL | 0 | 0 | 165,000 | 165,000 | | | |
| POC 003 | 3 | State of Mo. Sales Tax | 0 | 0 | 5,631 | 5,631 | | | |
| POC 004 | 3 | State of Mo. Sales Tax | 0 | 0 | 526 | 526 | | | |
| POC 005 | 3 | State of Mo. Sales Tax | 0 | 0 | 55 | 55 | | | |
| POC 007 | 3 | Super 8 Worldwide / Wyndham | 0 | 0 | 255,319 | 255,319 | | 740,501 | |
| Scheduled | 4 | Bhakta, J. & P. | 0 | 0 | 400,000 | 400,000 | | 400,000 | |
| | | | | | | 0.00 | | | |
| TOTAL CLAIMS | | | | | | 2,720,501 | | | |
| C:\Users\jcaruth\AppData\Local\VorldonsZMSv00NKUB002v00002q2274064.XLSX]KUB302 | | | | | | | | | |

Formatted: Do not check spelling or grammar

2337033.DOCX 3325655.DOCX[3]

EXHIBIT KUB303.03

| EXHIBIT KUB303.03 | | |
|---|---|---|
| Liquidation Analysis | | |
| No Admission of Liability | | |
| | | |
| Total Property (exh KUB001) | 1,614,348.09 | |
| | | |
| Total Claims (exh KUB002) | (2,720,501.37) | |
| | | |
| TOTAL | (1,106,153.28) | |
| | | |

**Formatted:** Do not check spelling or grammar

2337033.DOCX2325655.DOCX[4]

EXHIBIT KUB304.03

---

**EXHIBIT KUB304.03**

**PROJECTIONS**

**THE PROJECTED FINANCIAL INFORMATION AND OTHER FORWARD LOOKING STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE BASED ON VARIOUS ASSUMPTIONS AND ESTIMATES AND WILL NOT BE UPDATED TO REFLECT EVENTS OCCURRING AFTER THE DATE HEREOF.  SUCH INFORMATION AND STATEMENTS ARE SUBJECT TO INHERENT UNCERTAINTIES AND TO A WIDE VARIETY OF SIGNIFICANT BUSINESS, ECONOMIC, AND COMPETITIVE RISKS INCLUDING, AMONG OTHERS, THOSE DESCRIBED HEREIN. CONSEQUENTLY, ACTUAL EVENTS, CIRCUMSTANCES, EFFECTS AND RESULTS MAY VARY SIGNIFICANTLY FROM THOSE INCLUDED IN OR CONTEMPLATED BY SUCH PROJECTED FINANCIAL INFORMATION AND SUCH OTHER FORWARD-LOOKING STATEMENTS.**

**NO CLAIM SHOULD BE DEEMED TO BE ALLOWED IN ANY PARTICULAR AMOUNT BASED UPON A DESCRIPTION OR REFERENCE TO ANY SUCH CLAIM OR TO ANY CLASS IN THE PROJECTIONS.**

**Formatted:** Do not check spelling or grammar

2337033.DOCX2325655.DOCX[5]

**EXHIBIT KUB304.03**

**2/22/2023 KUBERLAXIMI  5 YEAR FINANCIAL PROJECTIONS**

| ASSUMPTIONS | | | | | | |
|---|---|---|---|---|---|---|
| | | | Revenue Assumptions | 2.00% annual increase in expenses | | |
| | | | Payroll Assumptions | 2.00% annual increase in payroll expense | | |
| | | | Expense Assumptions | 4.00% annual increase in revenue | | |

| FINANCIAL ASSUMPTIONS | Balance | | Interest Rate | | | |
|---|---|---|---|---|---|---|
| Celtic Bank Secured Portion of Loan | $1,580,000.00 | | 5.75% | Celtic Bank Secured | 5.75% | 25.00 Year Amortization Months 31-60/Int Only Months 1-30 |
| Non-Celtic Unsecured Creditors | 835,535.00 | | | Adair County | 12.00% | 4.00 Years Fully Amortized Payments |
| Unsecured Portion of Celtic Bank Loan | 294,269.36 | | | | | |
| Total Unsecured Claims | 1,129,804.36 | | | | | |
| Unsecurity Priority Tax Claims Adair County | 17,000.00 | | 12.00% | MO Dept Rev | 12.00% | 4.00 Years Fully Amortized Payments |
| Unsecurity Priority Tax Claims Missouri Department of Rev | 54,145.07 | | 12.00% | | | |

| | | | | | yr 1 | yr 2 | yr 3 | yr 4 | yr 5 |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | 2 pmts | 2 pmts | 2 pmts | 2 pmts | 2 pmts |
| Projected Average Annual Net Income | | | | Bi-Annual Payments to | Totaling | Totaling | Totaling | Totaling | Totaling |
| Cumulative Net Revenue Available Paid For Unsecued Creditors | 165,757 | | | General Unsec Claims | 43,013 | 43,244 | 29,150 | 14,938 | 35,411 |
| % of General Unsecured Creditors Claims Paid Under the Plan | 14.67% | | | | | | | | |

**PROJECTIONS YEAR 1 KUBERLAXIMI**

| Income | | | Mar-23 | Apr-23 | May-23 | Jun-23 | Jul-23 | Aug-23 | Sep-23 | Oct-23 | Nov-23 | Dec-23 | Jan-24 | Feb-24 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4000 Sales - Rooms | | | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 390,000 |
| 4100 Sales - Other | | | | | | | | | | | | | | | 0 |
| 4800 Sales - chargebacks and returns | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 4900 Uncategorized Income | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Revenues | | | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 390,000 |
| | | | | | | | | | | | | | | | |
| Cost of Goods Sold | | | | | | | | | | | | | | | |
| 5000 Supplies & Materials - Kitchen | | | 1,403 | 1,403 | 1,403 | 1,403 | 1,403 | 1,403 | 1,403 | 1,403 | 1,403 | 1,403 | 1,403 | 1,403 | 16,840 |
| 5210 Booking fees | | | 38 | 30 | 64 | 139 | 24 | 834 | 133 | 2 | 197 | 739 | 604 | 27 | 2,831 |
| 5720 Supplies | | | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| | | | | | | | | | | | | | | | |
| Total COGS | | | 1,941 | 1,933 | 1,967 | 2,042 | 1,928 | 2,737 | 2,036 | 1,905 | 2,100 | 2,643 | 2,507 | 1,931 | 25,671 |
| | | | | | | | | | | | | | | | |
| Gross Profit | | | 30,559 | 30,567 | 30,533 | 30,458 | 30,572 | 29,763 | 30,464 | 30,595 | 30,400 | 29,857 | 29,993 | 30,569 | 364,329 |
| Operating Expenses | | | | | | | | | | | | | | | |
| COK WATER | | | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 |
| AMERN ELECTRIC | | | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 21,600 |
| SPARK LIGHT -PHONE- INTERNET | | | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 9,000 |
| LIBERTY UTILITES GAS | | | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 4,800 |
| DIRECT TV CABLE | | | 757 | 757 | 757 | 757 | 757 | 757 | 757 | 757 | 757 | 757 | 757 | 757 | 9,084 |
| PROPERTY INSURANCE | | | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| CLOUD 5 - TECH SUPPORT | | | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 2,040 |
| JUDY - BOOK KEEPER | | | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 7,200 |
| PAY ROLL EMP | | | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| AP INTEGO- WK-COMP | | | 175 | 175 | 175 | 175 | 175 | 175 | 175 | 175 | 175 | 175 | 175 | 175 | 2,100 |
| JATIN BHAKTA- TRIP TO MO | | | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| CASH LABORS | | | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,000 |
| SUPPLIES | | | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| ASI FRONT DESK | | | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| EMPLOEE PAY ROLL | | | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| SNOW REMOVAL | | | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| RTS WASTE REMOVAL | | | 130 | 130 | 130 | 130 | 130 | 130 | 130 | 130 | 130 | 130 | 130 | 130 | 1,560 |
| HOME DEPOT WINTER SUPPLIES | | | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 1,500 |
| MERMACK FIRE SAFTEY INSPECTION | | | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 4,200 |
| MISSOURI DEPT OF HEALTH | | | 175 | 175 | 175 | 175 | 175 | 175 | 175 | 175 | 175 | 175 | 175 | 175 | 2,100 |
| MISCLANIOUS EST | | | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,000 |
| | | | | | | | | | | | | | | | |
| Total Operating Expenses | | | 17,332 | 17,332 | 17,332 | 17,332 | 17,332 | 17,332 | 17,332 | 17,332 | 17,332 | 17,332 | 17,332 | 17,332 | 207,984 |
| | | | | | | | | | | | | | | | |
| NOI | | | 13,227 | 13,235 | 13,201 | 13,126 | 13,240 | 12,431 | 13,132 | 13,263 | 13,068 | 12,525 | 12,661 | 13,237 | 156,345 |
| Monthly Payments | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| Celtic Bank Secured Portion of Loan | | | 7,571 | 7,571 | 7,571 | 7,571 | 7,571 | 7,571 | 7,571 | 7,571 | 7,571 | 7,571 | 7,571 | 7,571 | 90,850 |
| Unsecurity Priority Tax Claims Adair County | | | 448 | 448 | 448 | 448 | 448 | 448 | 448 | 448 | 448 | 448 | 448 | 448 | 5,372 |
| Unsecurity Priority Tax Claims Missouri Department of Rev | | | 1,426 | 1,426 | 1,426 | 1,426 | 1,426 | 1,426 | 1,426 | 1,426 | 1,426 | 1,426 | 1,426 | 1,426 | 17,110 |
| Debtor Counsel Admin Claims | | | 40,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 40,000 |
| Sub V Trustee | | | 5,000 | | | | | | 0 | | | | | | 5,000 |
| Total Monthly Plan Payments | | | 54,444 | 9,444 | 9,444 | 9,444 | 9,444 | 9,444 | 9,444 | 9,444 | 9,444 | 9,444 | 9,444 | 9,444 | 158,332 |
| | | | | | | | | | | | | | | | |
| Combined Operating Expenses and Monthly Plan Payments | | | 71,776 | 26,776 | 26,776 | 26,776 | 26,776 | 26,776 | 26,776 | 26,776 | 26,776 | 26,776 | 26,776 | 26,776 | 366,316 |
| | | | | | | | | | | | | | | | |
| Net Income After Opex and Plan Payments Available for Dist to Unsecued's | | | -41,218 | 3,790 | 3,756 | 3,681 | 3,796 | 2,986 | 3,687 | 3,818 | 3,624 | 3,081 | 3,216 | 3,793 | 43,013 |
| | | | | | | | | | | | | | | | incl New Value |
| New Value | | 45,000 | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| Start  Balance | | | 3,782 | 7,573 | 11,329 | 15,011 | 18,807 | 21,793 | 25,480 | 29,299 | 32,922 | 36,003 | 39,220 | 43,013 | |

| FINANCIAL ASSUMPTIONS | Balance | | Interest Rate | | Celtic Bank Secured | 5.75% | 25.00 Year Amortization Months 31-60/Int Only Months 1-30 | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Celtic Bank Secured Portion of Loan | $1,580,000.00 | | 5.75% | | Adair County | 12.00% | 4.00 Years Fully Amortized Payments | | | | |
| Non-Celtic Unsecured Creditors | 835,535.00 | | | | | | | | | | |
| Unsecured Portion of Celtic Bank Loan | 294,269.36 | | | | | | | | | | |
| Total Unsecured Claims | 1,129,804.36 | | | | | | | | | | |
| Unsecurity Priority Tax Claims Adair County | 17,000.00 | | 12.00% | | MO Dept Rev | 12.00% | 4.00 Years Fully Amortized Payments | | | | |
| | | | | | | | | | | | |
| Unsecurity Priority Tax Claims Missouri Department of Rev | 54,145.07 | | 12.00% | | | | yr 1 | yr 2 | yr 3 | yr 4 | yr 5 |
| | | | | | | | 2 pmts | 2 pmts | 2 pmts | 2 pmts | 2 pmts |
| Projected Average Annual Net Income | | | | | Bi-Annual Payments to | | Totaling | Totaling | Totaling | Totaling | Totaling |
| Cumulative Net Revenue Available Paid For Unsecued Creditors | 165,757 | | | | General Unsec Claims | | 43,013 | 43,244 | 29,150 | 14,938 | 35,411 |
| % of General Unsecured Creditors Claims Paid Under the Plan | 14.67% | | | | | | | | | | |

| PROJECTIONS YEAR 2 KUBERLAXIMI | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Mar-24 | Apr-24 | May-24 | Jun-24 | Jul-24 | Aug-24 | Sep-24 | Oct-24 | Nov-24 | Dec-24 | Jan-25 | Feb-25 | |
| **Income** | | | | | | | | | | | | | | |
| 4000 Sales - Rooms | | 33,150 | 33,150 | 33,150 | 33,150 | 33,150 | 33,150 | 33,150 | 33,150 | 33,150 | 33,150 | 33,150 | 33,150 | 397,800 |
| 4100 Sales - Other | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 4800 Sales - chargebacks and returns | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 4900 Uncategorized Income | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | | | | | | | | |
| **Total Revenues** | | 33,150 | 33,150 | 33,150 | 33,150 | 33,150 | 33,150 | 33,150 | 33,150 | 33,150 | 33,150 | 33,150 | 33,150 | |
| | | | | | | | | | | | | | | |
| **Cost of Goods Sold** | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| 5000 Supplies & Materials - Kitchen | | 1,459 | 1,459 | 1,459 | 1,459 | 1,459 | 1,459 | 1,459 | 1,459 | 1,459 | 1,459 | 1,459 | 1,459 | 17,514 |
| 5210 Booking fees | | 39 | 31 | 66 | 145 | 25 | 867 | 138 | 2 | 205 | 769 | 628 | 28 | 2,944 |
| 5720 Supplies | | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 6,240 |
| | | | | | | | | | | | | | | |
| **Total COGS** | | 2,019 | 2,011 | 2,046 | 2,124 | 2,005 | 2,847 | 2,118 | 1,982 | 2,184 | 2,748 | 2,608 | 2,008 | 26,698 |
| | | | | | | | | | | | | | | |
| **Gross Profit** | | 31,131 | 31,139 | 31,104 | 31,026 | 31,145 | 30,303 | 31,032 | 31,168 | 30,966 | 30,402 | 30,542 | 31,142 | 371,102 |
| | | | | | | | | | | | | | | |
| **Operating Expenses** | | | | | | | | | | | | | | |
| COK WATER | | 714 | 714 | 714 | 714 | 714 | 714 | 714 | 714 | 714 | 714 | 714 | 714 | 8,568 |
| AMERN ELECTRIC | | 1,836 | 1,836 | 1,836 | 1,836 | 1,836 | 1,836 | 1,836 | 1,836 | 1,836 | 1,836 | 1,836 | 1,836 | 22,032 |
| SPARK LIGHT -PHONE- INTERNET | | 765 | 765 | 765 | 765 | 765 | 765 | 765 | 765 | 765 | 765 | 765 | 765 | 9,180 |
| LIBERTY UTILITES GAS | | 408 | 408 | 408 | 408 | 408 | 408 | 408 | 408 | 408 | 408 | 408 | 408 | 4,896 |
| DIRECT TV CABLE | | 772 | 772 | 772 | 772 | 772 | 772 | 772 | 772 | 772 | 772 | 772 | 772 | 9,266 |
| PROPERTY INSURANCE | | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 3,060 | 36,720 |
| CLOUD 5 - TECH SUPPORT | | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 177 | 2,122 |
| JUDY - BOOK KEEPER | | 624 | 624 | 624 | 624 | 624 | 624 | 624 | 624 | 624 | 624 | 624 | 624 | 7,488 |
| PAY ROLL EMP | | 1,248 | 1,248 | 1,248 | 1,248 | 1,248 | 1,248 | 1,248 | 1,248 | 1,248 | 1,248 | 1,248 | 1,248 | 14,976 |
| AP INTEGO- WK-COMP | | 182 | 182 | 182 | 182 | 182 | 182 | 182 | 182 | 182 | 182 | 182 | 182 | 2,184 |
| JATIN BHAKTA- TRIP TO MO | | 1,040 | 1,040 | 1,040 | 1,040 | 1,040 | 1,040 | 1,040 | 1,040 | 1,040 | 1,040 | 1,040 | 1,040 | 12,480 |
| CASH LABORS | | 260 | 260 | 260 | 260 | 260 | 260 | 260 | 260 | 260 | 260 | 260 | 260 | 3,120 |
| SUPPLIES | | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 6,240 |
| ASI FRONT DESK | | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 520 | 6,240 |
| EMPLOEE PAY ROLL | | 3,120 | 3,120 | 3,120 | 3,120 | 3,120 | 3,120 | 3,120 | 3,120 | 3,120 | 3,120 | 3,120 | 3,120 | 37,440 |
| SNOW REMOVAL | | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 18,720 |
| RTS WASTE REMOVAL | | 135 | 135 | 135 | 135 | 135 | 135 | 135 | 135 | 135 | 135 | 135 | 135 | 1,622 |
| HOME DEPOT WINTER SUPPLIES | | 130 | 130 | 130 | 130 | 130 | 130 | 130 | 130 | 130 | 130 | 130 | 130 | 1,560 |
| MERMACK FIRE SAFTEY INSPECTION | | 364 | 364 | 364 | 364 | 364 | 364 | 364 | 364 | 364 | 364 | 364 | 364 | 4,368 |
| MISSOURI DEPT OF HEALTH | | 182 | 182 | 182 | 182 | 182 | 182 | 182 | 182 | 182 | 182 | 182 | 182 | 2,184 |
| MISCLANIOUS EST | | 260 | 260 | 260 | 260 | 260 | 260 | 260 | 260 | 260 | 260 | 260 | 260 | 3,120 |
| | | | | | | | | | | | | | | |
| **Total Operating Expenses** | | 17,877 | 17,877 | 17,877 | 17,877 | 17,877 | 17,877 | 17,877 | 17,877 | 17,877 | 17,877 | 17,877 | 17,877 | 214,526 |
| | | | | | | | | | | | | | | |
| **NOI** | | 13,254 | 13,262 | 13,227 | 13,149 | 13,268 | 12,426 | 13,155 | 13,291 | 13,089 | 12,524 | 12,665 | 13,265 | 156,577 |
| Monthly Payments | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| Celtic Bank Secured Portion of Loan | | 7,571 | 7,571 | 7,571 | 7,571 | 7,571 | 7,571 | 7,571 | 7,571 | 7,571 | 7,571 | 7,571 | 7,571 | 90,850 |
| Unsecurity Priority Tax Claims Adair County | | 448 | 448 | 448 | 448 | 448 | 448 | 448 | 448 | 448 | 448 | 448 | 448 | 5,372 |
| Unsecurity Priority Tax Claims Missouri Department of Rev | | 1,426 | 1,426 | 1,426 | 1,426 | 1,426 | 1,426 | 1,426 | 1,426 | 1,426 | 1,426 | 1,426 | 1,426 | 17,110 |
| Debtor Counsel Admin Claims | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Sub V Trustee | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | | | | | | | | |
| **Total Monthly Plan Payments** | | 9,444 | 9,444 | 9,444 | 9,444 | 9,444 | 9,444 | 9,444 | 9,444 | 9,444 | 9,444 | 9,444 | 9,444 | 113,332 |
| | | | | | | | | | | | | | | |
| **Combined Operating Expenses and Monthly Plan Payments** | | 27,322 | 27,322 | 27,322 | 27,322 | 27,322 | 27,322 | 27,322 | 27,322 | 27,322 | 27,322 | 27,322 | 27,322 | 327,858 |
| Net Income After Opex and Plan Payments Available for Dist to Unsecured's | | 3,810 | 3,818 | 3,783 | 3,704 | 3,824 | 2,982 | 3,711 | 3,847 | 3,645 | 3,080 | 3,221 | 3,821 | 43,244 |
| | 0.00 | | | | | | | | | | | | | |
| Start  Balance | | 43012.82 | 46,823 | 50,640 | 54,423 | 58,127 | 61,951 | 64,933 | 68,644 | 72,491 | 76,135 | 79,215 | 82,436 | 86,257 |

| FINANCIAL ASSUMPTIONS | Balance | | Interest Rate | | Celtic Bank Secured I | 5.75% | 25.00 Year Amortization Months 31-60/Int Only Months 1-30 |
|---|---|---|---|---|---|---|---|
| Celtic Bank Secured Portion of Loan | $1,580,000.00 | | 5.75% | | Adair County | 12.00% | 4.00 Years Fully Amortized Payments |
| Non-Celtic Unsecured Creditors | 835,535.00 | | | | | | |
| Unsecured Portion of Celtic Bank Loan | 294,269.36 | | | | | | |
| Total Unsecured Claims | 1,129,804.36 | | | | | | |
| Unsecurity Priority Tax Claims Adair County | 17,000.00 | | 12.00% | | MO Dept Rev | 12.00% | 4.00 Years Fully Amortized Payments |
| | | | | | | | |
| Unsecurity Priority Tax Claims Missouri Department of Rev | 54,145.07 | | 12.00% | | | | yr 1 | yr 2 | yr 3 | yr 4 | yr 5 |
| | | | | | | | 2 pmts | 2 pmts | 2 pmts | 2 pmts | 2 pmts |
| Projected Average Annual Net Income | | | | | Bi-Annual Payments to | | Totaling | Totaling | Totaling | Totaling | Totaling |
| Cumulative Net Revenue Available Paid For Unsecued Creditors | 165,757 | | | | General Unsec Claims | | 43,013 | 43,244 | 29,150 | 14,938 | 35,411 |
| % of General Unsecured Creditors Claims Paid Under the Plan | 14.67% | | | | | | | | | | |

| PROJECTIONS YEAR 3 KUBERLAXIMI | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Mar-25 | Apr-25 | May-25 | Jun-25 | Jul-25 | Aug-25 | Sep-25 | Oct-25 | Nov-25 | Dec-25 | Jan-26 | Feb-26 | |
| **Income** | | | | | | | | | | | | | | |
| 4000 Sales - Rooms | | 33,813 | 33,813 | 33,813 | 33,813 | 33,813 | 33,813 | 33,813 | 33,813 | 33,813 | 33,813 | 33,813 | 33,813 | 405,756 |
| 4100 Sales - Other | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 4800 Sales - chargebacks and returns | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 4900 Uncategorized Income | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total Revenues** | | 33,813 | 33,813 | 33,813 | 33,813 | 33,813 | 33,813 | 33,813 | 33,813 | 33,813 | 33,813 | 33,813 | 33,813 | 405,756 |
| **Cost of Goods Sold** | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 5000 Supplies & Materials - Kitchen | | 1,518 | 1,518 | 1,518 | 1,518 | 1,518 | 1,518 | 1,518 | 1,518 | 1,518 | 1,518 | 1,518 | 1,518 | 18,214 |
| 5210 Booking fees | | 41 | 32 | 69 | 150 | 26 | 902 | 144 | 2 | 213 | 800 | 653 | 29 | 3,062 |
| 5720 Supplies | | 541 | 541 | 541 | 541 | 541 | 541 | 541 | 541 | 541 | 541 | 541 | 541 | 6,490 |
| **Total COGS** | | 2,100 | 2,091 | 2,128 | 2,209 | 2,085 | 2,961 | 2,202 | 2,061 | 2,271 | 2,858 | 2,712 | 2,088 | 27,766 |
| **Gross Profit** | | 31,713 | 31,722 | 31,685 | 31,604 | 31,728 | 30,852 | 31,611 | 31,752 | 31,542 | 30,955 | 31,101 | 31,725 | 377,990 |
| **Operating Expenses** | | | | | | | | | | | | | | |
| COK WATER | | 728 | 728 | 728 | 728 | 728 | 728 | 728 | 728 | 728 | 728 | 728 | 728 | 8,739 |
| AMERN ELECTRIC | | 1,873 | 1,873 | 1,873 | 1,873 | 1,873 | 1,873 | 1,873 | 1,873 | 1,873 | 1,873 | 1,873 | 1,873 | 22,473 |
| SPARK LIGHT -PHONE- INTERNET | | 780 | 780 | 780 | 780 | 780 | 780 | 780 | 780 | 780 | 780 | 780 | 780 | 9,364 |
| LIBERTY UTILITES GAS | | 416 | 416 | 416 | 416 | 416 | 416 | 416 | 416 | 416 | 416 | 416 | 416 | 4,994 |
| DIRECT TV CABLE | | 788 | 788 | 788 | 788 | 788 | 788 | 788 | 788 | 788 | 788 | 788 | 788 | 9,451 |
| PROPERTY INSURANCE | | 3,121 | 3,121 | 3,121 | 3,121 | 3,121 | 3,121 | 3,121 | 3,121 | 3,121 | 3,121 | 3,121 | 3,121 | 37,454 |
| CLOUD 5 - TECH SUPPORT | | 184 | 184 | 184 | 184 | 184 | 184 | 184 | 184 | 184 | 184 | 184 | 184 | 2,206 |
| JUDY - BOOK KEEPER | | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 7,788 |
| PAY ROLL EMP | | 1,296 | 1,296 | 1,296 | 1,296 | 1,296 | 1,296 | 1,296 | 1,296 | 1,296 | 1,296 | 1,296 | 1,296 | 15,575 |
| AP INTEGO- WK-COMP | | 189 | 189 | 189 | 189 | 189 | 189 | 189 | 189 | 189 | 189 | 189 | 189 | 2,271 |
| JATIN BHAKTA- TRIP TO MO | | 1,082 | 1,082 | 1,082 | 1,082 | 1,082 | 1,082 | 1,082 | 1,082 | 1,082 | 1,082 | 1,082 | 1,082 | 12,979 |
| CASH LABORS | | 270 | 270 | 270 | 270 | 270 | 270 | 270 | 270 | 270 | 270 | 270 | 270 | 3,245 |
| SUPPLIES | | 541 | 541 | 541 | 541 | 541 | 541 | 541 | 541 | 541 | 541 | 541 | 541 | 6,490 |
| ASI FRONT DESK | | 541 | 541 | 541 | 541 | 541 | 541 | 541 | 541 | 541 | 541 | 541 | 541 | 6,490 |
| EMPLOEE PAY ROLL | | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 38,938 |
| SNOW REMOVAL | | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 19,469 |
| RTS WASTE REMOVAL | | 141 | 141 | 141 | 141 | 141 | 141 | 141 | 141 | 141 | 141 | 141 | 141 | 1,687 |
| HOME DEPOT WINTER SUPPLIES | | 135 | 135 | 135 | 135 | 135 | 135 | 135 | 135 | 135 | 135 | 135 | 135 | 1,622 |
| MERMACK FIRE SAFTEY INSPECTION | | 379 | 379 | 379 | 379 | 379 | 379 | 379 | 379 | 379 | 379 | 379 | 379 | 4,543 |
| MISSOURI DEPT OF HEALTH | | 189 | 189 | 189 | 189 | 189 | 189 | 189 | 189 | 189 | 189 | 189 | 189 | 2,271 |
| MISCLANIOUS EST | | 270 | 270 | 270 | 270 | 270 | 270 | 270 | 270 | 270 | 270 | 270 | 270 | 3,245 |
| **Total Operating Expenses** | | 18,441 | 18,441 | 18,441 | 18,441 | 18,441 | 18,441 | 18,441 | 18,441 | 18,441 | 18,441 | 18,441 | 18,441 | 221,293 |
| **NOI** | | 13,272 | 13,281 | 13,244 | 13,163 | 13,287 | 12,411 | 13,169 | 13,311 | 13,101 | 12,514 | 12,660 | 13,284 | 156,697 |
| **Monthly Payments** | | | | | | | | | | | | | | 0 |
| Celtic Bank Secured Portion of Loan | | 7,571 | 7,571 | 7,571 | 7,571 | 7,571 | 7,571 | 9,940 | 9,940 | 9,940 | 9,940 | 9,940 | 9,940 | 105,064 |
| Unsecurity Priority Tax Claims Adair County | | 448 | 448 | 448 | 448 | 448 | 448 | 448 | 448 | 448 | 448 | 448 | 448 | 5,372 |
| Unsecurity Priority Tax Claims Missouri Department of Rev | | 1,426 | 1,426 | 1,426 | 1,426 | 1,426 | 1,426 | 1,426 | 1,426 | 1,426 | 1,426 | 1,426 | 1,426 | 17,110 |
| Sub V Trustee | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Monthly Plan Payments | | 9,444 | 9,444 | 9,444 | 9,444 | 9,444 | 9,444 | 11,813 | 11,813 | 11,813 | 11,813 | 11,813 | 11,813 | 127,547 |
| Combined Operating Expenses and Monthly Plan Payments | | 27,885 | 27,885 | 27,885 | 27,885 | 27,885 | 27,885 | 30,255 | 30,255 | 30,255 | 30,255 | 30,255 | 30,255 | 348,840 |
| Net Income After Opex and Plan Payments Available for Dist to Unsecued's | | 3,828 | 3,836 | 3,800 | 3,719 | 3,843 | 2,967 | 1,356 | 1,498 | 1,287 | 700 | 847 | 1,470 | 29,150 |
| Start  Balance | | 86,257 | 90,085 | 93,922 | 97,721 | 101,440 | 105,283 | 108,249 | 109,606 | 111,103 | 112,390 | 113,090 | 113,937 | 115,407 |

| FINANCIAL ASSUMPTIONS | Balance | | Interest Rate | | Celtic Bank Secured | 5.75% | 25.00 | Year Amortization Months 31-60/Int Only Months 1-30 | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Celtic Bank Secured Portion of Loan | $1,580,000.00 | | 5.75% | | Adair County | 12.00% | 4.00 | Years Fully Amortized Payments | | | | |
| Non-Celtic Unsecured Creditors | 835,535.00 | | | | | | | | | | | |
| Unsecured Portion of Celtic Bank Loan | 294,269.36 | | | | | | | | | | | |
| Total Unsecured Claims | 1,129,804.36 | | | | | | | | | | | |
| Unsecurity Priority Tax Claims Adair County | 17,000.00 | | 12.00% | | MO Dept Rev | 12.00% | 4.00 | Years Fully Amortized Payments | | | | |
| | | | | | | | | | | | | |
| Unsecurity Priority Tax Claims Missouri Department of Rev | 54,145.07 | | 12.00% | | | | yr 1 | yr 2 | yr 3 | yr 4 | yr 5 | |
| | | | | | | | 2 pmts | 2 pmts | 2 pmts | 2 pmts | 2 pmts | |
| Projected Average Annual Net Income | | | | | Bi-Annual Payments to | | Totaling | Totaling | Totaling | Totaling | Totaling | |
| Cumulative Net Revenue Available Paid For Unsecued Creditors | 165,757 | | | | General Unsec Claims | | 43,013 | 43,244 | 29,150 | 14,938 | 35,411 | |
| % of General Unsecured Creditors Claims Paid Under the Plan | 14.67% | | | | | | | | | | | |

| PROJECTIONS YEAR 4 KUBERLAXIMI | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Mar-26 | Apr-26 | May-26 | Jun-26 | Jul-26 | Aug-26 | Sep-26 | Oct-26 | Nov-26 | Dec-26 | Jan-27 | Feb-27 | |
| Income | | | | | | | | | | | | | |
| 4000 Sales - Rooms | 34,489 | 34,489 | 34,489 | 34,489 | 34,489 | 34,489 | 34,489 | 34,489 | 34,489 | 34,489 | 34,489 | 34,489 | 413,871 |
| 4100 Sales - Other | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 4800 Sales - chargebacks and returns | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 4900 Uncategorized Income | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Revenues | 34,489 | 34,489 | 34,489 | 34,489 | 34,489 | 34,489 | 34,489 | 34,489 | 34,489 | 34,489 | 34,489 | 34,489 | 413,871 |
| Cost of Goods Sold | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 5000 Supplies & Materials - Kitchen | 1,579 | 1,579 | 1,579 | 1,579 | 1,579 | 1,579 | 1,579 | 1,579 | 1,579 | 1,579 | 1,579 | 1,579 | 18,943 |
| 5210 Booking fees | 43 | 34 | 72 | 156 | 27 | 938 | 150 | 2 | 221 | 832 | 679 | 31 | 3,184 |
| 5720 Supplies | 562 | 562 | 562 | 562 | 562 | 562 | 562 | 562 | 562 | 562 | 562 | 562 | 6,749 |
| Total COGS | 2,184 | 2,175 | 2,213 | 2,297 | 2,168 | 3,079 | 2,291 | 2,143 | 2,362 | 2,973 | 2,820 | 2,172 | 28,876 |
| Gross Profit | 32,306 | 32,315 | 32,276 | 32,192 | 32,321 | 31,410 | 32,199 | 32,346 | 32,127 | 31,517 | 31,669 | 32,318 | 384,995 |
| Operating Expenses | | | | | | | | | | | | | |
| COK WATER | 743 | 743 | 743 | 743 | 743 | 743 | 743 | 743 | 743 | 743 | 743 | 743 | 8,914 |
| AMERN ELECTRIC | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 22,922 |
| SPARK LIGHT -PHONE- INTERNET | 796 | 796 | 796 | 796 | 796 | 796 | 796 | 796 | 796 | 796 | 796 | 796 | 9,551 |
| LIBERTY UTILITES GAS | 424 | 424 | 424 | 424 | 424 | 424 | 424 | 424 | 424 | 424 | 424 | 424 | 5,094 |
| DIRECT TV CABLE | 803 | 803 | 803 | 803 | 803 | 803 | 803 | 803 | 803 | 803 | 803 | 803 | 9,640 |
| PROPERTY INSURANCE | 3,184 | 3,184 | 3,184 | 3,184 | 3,184 | 3,184 | 3,184 | 3,184 | 3,184 | 3,184 | 3,184 | 3,184 | 38,203 |
| CLOUD 5 - TECH SUPPORT | 191 | 191 | 191 | 191 | 191 | 191 | 191 | 191 | 191 | 191 | 191 | 191 | 2,295 |
| JUDY - BOOK KEEPER | 675 | 675 | 675 | 675 | 675 | 675 | 675 | 675 | 675 | 675 | 675 | 675 | 8,099 |
| PAY ROLL EMP | 1,350 | 1,350 | 1,350 | 1,350 | 1,350 | 1,350 | 1,350 | 1,350 | 1,350 | 1,350 | 1,350 | 1,350 | 16,198 |
| AP INTEGO- WK-COMP | 197 | 197 | 197 | 197 | 197 | 197 | 197 | 197 | 197 | 197 | 197 | 197 | 2,362 |
| JATIN BHAKTA- TRIP TO MO | 1,125 | 1,125 | 1,125 | 1,125 | 1,125 | 1,125 | 1,125 | 1,125 | 1,125 | 1,125 | 1,125 | 1,125 | 13,498 |
| CASH LABORS | 281 | 281 | 281 | 281 | 281 | 281 | 281 | 281 | 281 | 281 | 281 | 281 | 3,375 |
| SUPPLIES | 562 | 562 | 562 | 562 | 562 | 562 | 562 | 562 | 562 | 562 | 562 | 562 | 6,749 |
| ASI FRONT DESK | 562 | 562 | 562 | 562 | 562 | 562 | 562 | 562 | 562 | 562 | 562 | 562 | 6,749 |
| EMPLOEE PAY ROLL | 3,375 | 3,375 | 3,375 | 3,375 | 3,375 | 3,375 | 3,375 | 3,375 | 3,375 | 3,375 | 3,375 | 3,375 | 40,495 |
| SNOW REMOVAL | 1,687 | 1,687 | 1,687 | 1,687 | 1,687 | 1,687 | 1,687 | 1,687 | 1,687 | 1,687 | 1,687 | 1,687 | 20,248 |
| RTS WASTE REMOVAL | 146 | 146 | 146 | 146 | 146 | 146 | 146 | 146 | 146 | 146 | 146 | 146 | 1,755 |
| HOME DEPOT WINTER SUPPLIES | 141 | 141 | 141 | 141 | 141 | 141 | 141 | 141 | 141 | 141 | 141 | 141 | 1,687 |
| MERMACK FIRE SAFTEY INSPECTION | 394 | 394 | 394 | 394 | 394 | 394 | 394 | 394 | 394 | 394 | 394 | 394 | 4,724 |
| MISSOURI DEPT OF HEALTH | 197 | 197 | 197 | 197 | 197 | 197 | 197 | 197 | 197 | 197 | 197 | 197 | 2,362 |
| MISCLANIOUS EST | 281 | 281 | 281 | 281 | 281 | 281 | 281 | 281 | 281 | 281 | 281 | 281 | 3,375 |
| Total Operating Expenses | 19,025 | 19,025 | 19,025 | 19,025 | 19,025 | 19,025 | 19,025 | 19,025 | 19,025 | 19,025 | 19,025 | 19,025 | 228,296 |
| NOI | 13,281 | 13,290 | 13,252 | 13,167 | 13,296 | 12,386 | 13,174 | 13,321 | 13,102 | 12,492 | 12,644 | 13,293 | 156,699 |
| Monthly Payments | | | | | | | | | | | | | 0 |
| Celtic Bank Secured Portion of Loan | 9,940 | 9,940 | 9,940 | 9,940 | 9,940 | 9,940 | 9,940 | 9,940 | 9,940 | 9,940 | 9,940 | 9,940 | 119,279 |
| Unsecurity Priority Tax Claims Adair County | 448 | 448 | 448 | 448 | 448 | 448 | 448 | 448 | 448 | 448 | 448 | 448 | 5,372 |
| Unsecurity Priority Tax Claims Missouri Department of Rev | 1,426 | 1,426 | 1,426 | 1,426 | 1,426 | 1,426 | 1,426 | 1,426 | 1,426 | 1,426 | 1,426 | 1,426 | 17,110 |
| Sub V Trustee | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Monthly Plan Payments | 11,813 | 11,813 | 11,813 | 11,813 | 11,813 | 11,813 | 11,813 | 11,813 | 11,813 | 11,813 | 11,813 | 11,813 | 141,761 |
| Combined Operating Expenses and Monthly Plan Payments | 30,838 | 30,838 | 30,838 | 30,838 | 30,838 | 30,838 | 30,838 | 30,838 | 30,838 | 30,838 | 30,838 | 30,838 | 370,057 |
| Net Income After Opex and Plan Payments Available for Dist to Unsecured's | 1,468 | 1,477 | 1,438 | 1,354 | 1,483 | 572 | 1,361 | 1,508 | 1,289 | 679 | 831 | 1,480 | 14,938 |
| Start Balance | 115,407 | 116,875 | 118,352 | 119,790 | 121,144 | 122,627 | 123,199 | 124,560 | 126,068 | 127,357 | 128,035 | 128,866 | 130,346 | 1,487,218 |

EXHIBIT KUB304.03 - Page 4

| FINANCIAL ASSUMPTIONS | Balance | | Interest Rate | | Celtic Bank Secured I | 5.75% | 25.00 Year Amortization Months 31-60/Int Only Months 1-30 |
|---|---|---|---|---|---|---|---|
| Celtic Bank Secured Portion of Loan | $1,580,000.00 | | 5.75% | | Adair County | 12.00% | 4.00 Years Fully Amortized Payments |
| Non-Celtic Unsecured Creditors | 835,535.00 | | | | | | |
| Unsecured Portion of Celtic Bank Loan | 294,269.36 | | | | | | |
| Total Unsecured Claims | 1,129,804.36 | | | | | | |
| Unsecurity Priority Tax Claims Adair County | 17,000.00 | | 12.00% | | MO Dept Rev | 12.00% | 4.00 Years Fully Amortized Payments |
| | | | | | | | |
| Unsecurity Priority Tax Claims Missouri Department of Rev | 54,145.07 | | 12.00% | | | | yr 1 / yr 2 / yr 3 / yr 4 / yr 5 |
| | | | | | | | 2 pmts / 2 pmts / 2 pmts / 2 pmts / 2 pmts |
| Projected Average Annual Net Income | | | | | Bi-Annual Payments to | | Totaling / Totaling / Totaling / Totaling / Totaling |
| Cumulative Net Revenue Available Paid For Unsecued Creditors | 165,757 | | | | General Unsec Claims | | 43,013 / 43,244 / 29,150 / 14,938 / 35,411 |
| % of General Unsecured Creditors Claims Paid Under the Plan | 14.67% | | | | | | |

**PROJECTIONS YEAR 5 KUBERLAXIMI**

| | Mar-27 | Apr-27 | May-27 | Jun-27 | Jul-27 | Aug-27 | Sep-27 | Oct-27 | Nov-27 | Dec-27 | Jan-28 | Feb-28 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | | |
| 4000 Sales - Rooms | 35,179 | 35,179 | 35,179 | 35,179 | 35,179 | 35,179 | 35,179 | 35,179 | 35,179 | 35,179 | 35,179 | 35,179 | 422,149 |
| 4100 Sales - Other | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 4800 Sales - chargebacks and returns | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 4900 Uncategorized Income | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | | | | | | | |
| **Total Revenues** | 35,179 | 35,179 | 35,179 | 35,179 | 35,179 | 35,179 | 35,179 | 35,179 | 35,179 | 35,179 | 35,179 | 35,179 | 422,149 |
| | | | | | | | | | | | | | |
| **Cost of Goods Sold** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 5000 Supplies & Materials - Kitchen | 1,642 | 1,642 | 1,642 | 1,642 | 1,642 | 1,642 | 1,642 | 1,642 | 1,642 | 1,642 | 1,642 | 1,642 | 19,700 |
| 5210 Booking fees | 44 | 35 | 75 | 163 | 28 | 976 | 156 | 2 | 230 | 865 | 706 | 32 | 3,312 |
| 5720 Supplies | 585 | 585 | 585 | 585 | 585 | 585 | 585 | 585 | 585 | 585 | 585 | 585 | 7,019 |
| | | | | | | | | | | | | | |
| **Total COGS** | 2,271 | 2,262 | 2,301 | 2,389 | 2,255 | 3,202 | 2,382 | 2,229 | 2,457 | 3,092 | 2,933 | 2,258 | 30,031 |
| | | | | | | | | | | | | | |
| **Gross Profit** | 32,908 | 32,917 | 32,878 | 32,790 | 32,924 | 31,977 | 32,797 | 32,950 | 32,722 | 32,087 | 32,246 | 32,921 | 392,117 |
| | | | | | | | | | | | | | |
| **Operating Expenses** | | | | | | | | | | | | | |
| COK WATER | 758 | 758 | 758 | 758 | 758 | 758 | 758 | 758 | 758 | 758 | 758 | 758 | 9,092 |
| AMERN ELECTRIC | 1,948 | 1,948 | 1,948 | 1,948 | 1,948 | 1,948 | 1,948 | 1,948 | 1,948 | 1,948 | 1,948 | 1,948 | 23,381 |
| SPARK LIGHT -PHONE- INTERNET | 812 | 812 | 812 | 812 | 812 | 812 | 812 | 812 | 812 | 812 | 812 | 812 | 9,742 |
| LIBERTY UTILITES GAS | 433 | 433 | 433 | 433 | 433 | 433 | 433 | 433 | 433 | 433 | 433 | 433 | 5,196 |
| DIRECT TV CABLE | 819 | 819 | 819 | 819 | 819 | 819 | 819 | 819 | 819 | 819 | 819 | 819 | 9,833 |
| PROPERTY INSURANCE | 3,247 | 3,247 | 3,247 | 3,247 | 3,247 | 3,247 | 3,247 | 3,247 | 3,247 | 3,247 | 3,247 | 3,247 | 38,966 |
| CLOUD 5 - TECH SUPPORT | 199 | 199 | 199 | 199 | 199 | 199 | 199 | 199 | 199 | 199 | 199 | 199 | 2,387 |
| JUDY - BOOK KEEPER | 702 | 702 | 702 | 702 | 702 | 702 | 702 | 702 | 702 | 702 | 702 | 702 | 8,423 |
| PAY ROLL EMP | 1,404 | 1,404 | 1,404 | 1,404 | 1,404 | 1,404 | 1,404 | 1,404 | 1,404 | 1,404 | 1,404 | 1,404 | 16,846 |
| AP INTEGO- WK-COMP | 205 | 205 | 205 | 205 | 205 | 205 | 205 | 205 | 205 | 205 | 205 | 205 | 2,457 |
| JATIN BHAKTA- TRIP TO MO | 1,170 | 1,170 | 1,170 | 1,170 | 1,170 | 1,170 | 1,170 | 1,170 | 1,170 | 1,170 | 1,170 | 1,170 | 14,038 |
| CASH LABORS | 292 | 292 | 292 | 292 | 292 | 292 | 292 | 292 | 292 | 292 | 292 | 292 | 3,510 |
| SUPPLIES | 585 | 585 | 585 | 585 | 585 | 585 | 585 | 585 | 585 | 585 | 585 | 585 | 7,019 |
| ASI FRONT DESK | 585 | 585 | 585 | 585 | 585 | 585 | 585 | 585 | 585 | 585 | 585 | 585 | 7,019 |
| EMPLOEE PAY ROLL | 3,510 | 3,510 | 3,510 | 3,510 | 3,510 | 3,510 | 3,510 | 3,510 | 3,510 | 3,510 | 3,510 | 3,510 | 42,115 |
| SNOW REMOVAL | 1,755 | 1,755 | 1,755 | 1,755 | 1,755 | 1,755 | 1,755 | 1,755 | 1,755 | 1,755 | 1,755 | 1,755 | 21,057 |
| RTS WASTE REMOVAL | 152 | 152 | 152 | 152 | 152 | 152 | 152 | 152 | 152 | 152 | 152 | 152 | 1,825 |
| HOME DEPOT WINTER SUPPLIES | 146 | 146 | 146 | 146 | 146 | 146 | 146 | 146 | 146 | 146 | 146 | 146 | 1,755 |
| MERMACK FIRE SAFTEY INSPECTION | 409 | 409 | 409 | 409 | 409 | 409 | 409 | 409 | 409 | 409 | 409 | 409 | 4,913 |
| MISSOURI DEPT OF HEALTH | 205 | 205 | 205 | 205 | 205 | 205 | 205 | 205 | 205 | 205 | 205 | 205 | 2,457 |
| MISCLANIOUS EST | 292 | 292 | 292 | 292 | 292 | 292 | 292 | 292 | 292 | 292 | 292 | 292 | 3,510 |
| | | | | | | | | | | | | | |
| **Total Operating Expenses** | 19,786 | 19,786 | 19,786 | 19,786 | 19,786 | 19,786 | 19,786 | 19,786 | 19,786 | 19,786 | 19,786 | 19,786 | 237,428 |
| | | | | | | | | | | | | | |
| **NOI** | 13,123 | 13,132 | 13,092 | 13,004 | 13,138 | 12,191 | 13,011 | 13,164 | 12,937 | 12,302 | 12,460 | 13,135 | 154,690 |
| | | | | | | | | | | | | | |
| **Monthly Payments** | | | | | | | | | | | | | 0 |
| | | | | | | | | | | | | | |
| Celtic Bank Secured Portion of Loan | 9,940 | 9,940 | 9,940 | 9,940 | 9,940 | 9,940 | 9,940 | 9,940 | 9,940 | 9,940 | 9,940 | 9,940 | 119,279 |
| Unsecurity Priority Tax Claims Adair County | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Unsecurity Priority Tax Claims Missouri Department of Rev | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Sub V Trustee | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | | | | | | | |
| **Total Monthly Plan Payments** | 9,940 | 9,940 | 9,940 | 9,940 | 9,940 | 9,940 | 9,940 | 9,940 | 9,940 | 9,940 | 9,940 | 9,940 | 119,279 |
| Combined Operating Expenses and Monthly Plan Payments | 29,726 | 29,726 | 29,726 | 29,726 | 29,726 | 29,726 | 29,726 | 29,726 | 29,726 | 29,726 | 29,726 | 29,726 | 356,706 |
| Net Income After Opex and Plan Payments Available for Dist to Unsecured's | 3,183 | 3,192 | 3,152 | 3,064 | 3,199 | 2,251 | 3,071 | 3,225 | 2,997 | 2,362 | 2,520 | 3,195 | 35,411 |
| | | | | | | | | | | | | | |
| Start Balance | 130,346 | 133,528 | 136,720 | 139,872 | 142,937 | 146,135 | 148,387 | 151,458 | 154,683 | 157,679 | 160,041 | 162,562 | 165,757 |
| | | | | | | | | | | | | | |
| Balloon Payment | | | | | | | | | | | | | |
| Celtic Bank Secured Portion of Loan | 830,572 | | | | | | | | | | | | |
| Non-Celtic Unsecured Creditors | 835,535 | | | | | | | | | | | | |
| Unsecured Super & Personally Guaranteed Claim | 0 | | | | | | | | | | | | |

**EXHIBIT KUB305.01**

**RETAINED CAUSES OF ACTION**

Any and all claims and causes of action against Berkshire Hathaway Business Insurance and/or biBERK Business Insurance related to unpaid claims for water damages to the hotel property and unpaid claims related to employee theft.

**Formatted:** Do not check spelling or grammar